UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER LYNN GRABER,

                                  **DECISION AND ORDER**

                   Plaintiff,                    1:19-CV-00146(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the Commissioner of Social Security's final determination that plaintiff was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [8, 9].[1] The parties have consented to my jurisdiction [11]. Having reviewed the parties' submissions [8-10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 696-page administrative record is presumed. On April 22, 2015, plaintiff, who was 31 years old, applied for SSI due to depression, "lack of motivation", asthma, "difficulty focusing and reading", "several hernias", and "learning disability". Administrative record [7], p. 191.[2] After the application was denied, an

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]     Plaintiff had filed multiple previous applications that were unsuccessful. [7], p. 15.

administrative hearing was conducted before Administrative Law Judge ("ALJ") Bryce Baird on October 31, 2017, at which plaintiff, who was represented by counsel, and Kevin Yi, a vocational expert, testified. Id., pp. 31-83.

The record indicates that in August 2013 plaintiff began treatment on an outpatient basis at the Lake Shore Behavioral Health Center for a variety of symptoms, including anxiety. Id., pp. 509-11. Plaintiff also had a history of substance abuse (id., p. 510), and on September 30, 2014, was discharged from Lake Shore Behavioral Health and referred to outpatient substance abuse treatment. Id., pp. 457-58. After being terminated from outpatient substance abuse treatment for missing appointments, plaintiff resumed her treatment at Lake Shore Behavioral Health in March 2015, and continued to treat there throughout the relevant period. Id., pp. 476, 556-58. In March 2015, shortly before the April 22, 2015 relevant period, plaintiff reported that she was "still doing cocaine, smoking it with heroin daily". Id., p. 361.

However, in June 2015, shortly after the relevant period, she became sober. Id., pp. 310, 319. According to plaintiff, she entered a 28-day inpatient program. Id., p. 45. Plaintiff continued to report being sober in August 2015, November 2015, and April 2016. Id., pp. 366, 533-34, 685. Plaintiff's sobriety appears to have continued until September 7, 2016, when she reported a recent use of cocaine ($30 worth). Id., p. 543.

The medical opinion evidence in the record includes a July 13, 2015 consultative psychiatric examination conducted by Kevin Duffy, Psy.D., who assessed plaintiff with the following limitations:

- "some limitations in adaptive functioning at times, especially when abusing substances";

- "can follow and understand simple directions and instructions, and perform simple tasks independently";

- "may have mild to moderate difficulties maintain[ing] attention and concentration at times";

- "able to maintain a regular schedule";

- "can learn new tasks . . . .[and] perform complex tasks independently";

- "may have, at least moderate difficulties making appropriate decisions if she is abusing substances";

- "may have mild to moderate difficulties relating adequately with others"; and

- "may have at least moderate difficulties dealing appropriately with high levels of stress". Id., p. 321.

Dr. Duffy's examination was also "consistent with . . . substance abuse problems", which he found "may significantly interfere with the claimant's ability to function on a daily basis, given that the claimant is in an inpatient program". Id. He diagnosed plaintiff with bipolar disorder, cocaine and marijuana dependence, and alcohol and heroin abuse. Id. Plaintiff's prognosis was "[g]uarded to poor" at that time due to plaintiff's "lack of work history and substance abuse". Id., p. 322.

On August 6, 2015, state agency review consultant V. Reddy, Ph.D., determined that plaintiff was not significantly limited in the areas of functioning, except for moderate limitations carrying out detailed instructions, maintaining concentration and attention for extended periods, completing a normal workday/workweek without interruptions from psychological symptoms, interacting with the general public, responding appropriately to changes in the work setting, and setting realistic goals. Id., pp. 92-93.

On July 13, 2015, a consultative internal medicine examination was conducted by Samuel Balderman, M.D., who found that plaintiff had no physical limitations. Id., pp. 310-13. However, in March 2017 plaintiff sustained an ankle fracture, for which she underwent open

reduction and internal fixation surgery. Id., p. 428.  A June 15, 2017 x-ray revealed "good alignment" with "some . . . slight callus forming at the fracture site". Id., p. 628.

At the October 31, 2017 hearing, plaintiff testified that she had a relapse and used cocaine ($30 worth) two weeks earlier, but had otherwise been sober since August 2016. Id., pp. 45, 47. When asked why she had not worked since 2005, plaintiff testified that she was "getting involved in drugs at the time . . . . And getting in trouble, and arrested, and all that other . . . stuff.  Hanging around with the wrong crowds". Id., p. 52.  When asked what physical and mental conditions precluded her from working, plaintiff pointed to her leg pain, which began in March 2017. Id., pp. 52-53.  She explained that her leg pain made it difficult for her to stand for long periods of time. Id., p. 53. Plaintiff's inability to move quickly and her son making fun of her because of that also caused "mental pain and depression". Id. At the time of the hearing, plaintiff used a cane and anticipated returning to physical therapy. Id., p. 61.

Based on the record, ALJ Baird determined that plaintiff's severe impairments were depressive disorder, bipolar disorder, anxiety disorder, and post-traumatic stress disorder, but that these impairments (individual or collectively) did not meet Listings 12.04, 12.06 or 12.15. Id., pp. 17-18. In finding that plaintiff's ankle impairment was not severe, ALJ Baird explained that she used "a boot and cane during the recovery period", but that there "is no evidence to show that this condition is not expected to improve with treatment or has met or is expected to meet the twelve month durational requirement".  Id., p. 18.

ALJ Baird concluded that plaintiff had the residual functional capacity ("RFC") to perform "medium work", but limited her to "simple, routine tasks . . . and work that does not require travel to unfamiliar places". Id., p. 20.  He further found that plaintiff was limited to occasional interaction with the public, no teamwork, and "requires doing the same tasks every

day with little variation in location, hours, or tasks". Id., pp. 20-21.  In doing so, ALJ Baird afforded "significant weight" to the consultative opinions. Id., p. 24.  ALJ Baird recognized that Dr. Duffy had assessed plaintiff with "significant limitations with adaptive functioning and making appropriate decisions when abusing substances", but noted that plaintiff "testified at the October 31, 2017 hearing that she has only relapsed once since August 2016". Id.

Based upon plaintiff's RFC and the testimony of the vocational expert, ALJ Baird concluded that there were sufficient jobs in the national economy that plaintiff was capable of performing. Id., p. 35.  Therefore, he found that plaintiff was not disabled from April 22, 2015 through the date of his January 31, 2018 decision. Id., p. 26.  The Appeals Council denied plaintiff's request for review (id., pp. 1-6), and thereafter she commenced this action.

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.      Did ALJ Baird Err in Addressing Plaintiff's Substance Abuse?

Plaintiff argues that she had a "continuous problem" with drug abuse and alcoholism ("DAA") that "continued throughout the relevant time period", but that ALJ Baird failed to conduct a proper DAA analysis. Plaintiff's Memorandum of Law [8-1], pp. 11-15. The Commissioner responds that plaintiff's own testimony confirms that she did not have a continuous problem with DAA throughout the relevant period, and that no separate DAA analysis was required because notwithstanding her substance abuse, it did not render her disabled for a period of 12 months. Commissioner's Brief [9-1], pp. 16-19. Alternatively, the Commissioner argues that "even accepting Plaintiff's theory . . . that she was, over a period of at least 12 months, precluded from working by her substance abuse", DAA materiality precludes a finding of disability. Id., p. 19.

Where there is evidence of drug or alcohol abuse, the ALJ is required to "first use the standard sequential analysis to determine whether the claimant is disabled, *without segregating out any effects that might be due to substance use disorders*". Stringer v. Astrue, 2010 WL 55925, *10 (N.D.N.Y. 2010) (emphasis added). When that analysis results in a determination that the claimant is disabled, the ALJ must "evaluate disability a second time to determine whether the individual would still be disabled if he or she stopped using drugs or alcohol". Trankle v. Berryhill, 2017 WL 5988046, *2 n. 3 (W.D.N.Y. 2017). In the case of a co-occurring mental disorder, such as bipolar disorder, "the Commissioner 'will find that DAA is not material . . . to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.'" Murray v. Colvin, 2017

WL 1289588, *3 (W.D.N.Y. 2017), *quoting* Social Security Ruling 13-2p, 2013 WL 621536, *4, 9 (emphasis added).

Relying on plaintiff's testimony, ALJ Baird found that her substance abuse and resulting limitations did not last for a continuous period 12 months or more during the period at issue. [7], pp. 20, 24. Plaintiff argues that ALJ Baird's reliance on plaintiff's testimony that she had only relapsed once since August 2016 was erroneous, since he failed to consider the period prior to August 2016. Plaintiff's Memorandum of Law [10], p. 11.

It is plaintiff's burden to demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months". 42 U.S.C. §1382c(a)(3)(A). As the Commissioner argues, plaintiff cannot meet the durational threshold for any disabling limitations arising from her substance abuse, because the record establishes that "[p]laintiff became abstinent approximately when the relevant period began in April 2015, and since then her relapses had been transient". Commissioner's Brief [9-1], p. 19.

Plaintiff contends that her "substance abuse history was more complicated than she testified to". Plaintiff's Reply [10], p. 1. Not only was plaintiff's testimony concerning her substance abuse history during the relevant period clear, but also supported by the record. On August 17, 2015, plaintiff reported that she was 63 days sober ([7], p. 366), and plaintiff's sobriety appears to have continued through at least April 2016. Id., pp. 533-34 ("reports doing well on her medications [and] [c]laims abstinence"), 685 (November 18, 2015 - "denie[d] cravings" and reported that Zubsolv was "working well").[3]

---

[3] Zubsolv is "used to treat adults who are addicted to opioid drugs". www.zubsolv.com (last checked April 13, 2020).

Plaintiff does not argue that her mental health limitations standing alone (in the absence of her substance abuse) were severe enough to render her disabled or were inconsistent with her RFC. In fact, as the Commissioner notes, at the hearing plaintiff testified that it was the physical and mental effects of her ankle injury, rather than any mental health condition, that precluded her from working.  Commissioner's Brief [9-1], p. 15. Since any disabling effects from plaintiff's substance abuse did not occur for a continuous 12-month period, ALJ Baird correctly determined that plaintiff was not disabled.  Hence, ALJ Baird did not err by failing to conduct a materiality analysis.  See Anderson v. Berryhill, 2017 WL 1154993, *11 (E.D.N.Y. 2017) ("[i]f the ALJ . . . determines that Plaintiff is not disabled, he need not address the materiality of Plaintiff's substance abuse").

In any event, the Commissioner persuasively argues that "even accepting Plaintiff's theory . . . that she was, over a period of at least 12 months, precluded from working by her substance abuse . . . DAA materiality forecloses an award of disability benefits". Commissioner's Brief [9-1], p. 19.  As plaintiff herself recognizes, "where limitations associated with substance abuse *cannot be parsed* out from mental health limitations, substance abuse cannot be held material to a finding of disability". Plaintiff's Memorandum of Law [8-1], p. 15 (emphasis added).  However, that cannot be said here.

While Dr. Duffy assessed limitations that were related to plaintiff's substance abuse, he clearly delineated the disabling effects of plaintiff's substance abuse from the limiting effects of her mental health conditions.  For example, Dr. Duffy opined that plaintiff "may have, at least moderate difficulties making appropriate decisions *if she is abusing substances*".  Id., p. 321 (emphasis added).  He also noted that plaintiff's "substance abuse problems . . . may significantly interfere with [her] ability to function on a daily basis, *given that the claimant is in*

*an inpatient program*". Id. (emphasis added). Therefore, I find no basis to remand on this ground.

### C.      Did ALJ Baird Fail to Develop the Record?

Plaintiff argues that "[a]lthough [she] participated in individual treatment on a weekly basis throughout the relevant time period, only *four* of those notes appear in the record". Plaintiff's Memorandum of Law [8-1], p. 16 (emphasis in original).  According to her, these records "could have shed significant light on the extent to which Plaintiff's DAA was intertwined with her bipolar disorder". Id.  In response, the Commissioner argues that ALJ Baird had sufficient evidence adequate for him to a make a disability determination, which included "apart from a volume of other evidence, over a hundred pages of records from Lake Shore spanning the entirety of the relevant period".  Commissioner's Brief [9-1], pp. 21-22.  The Commissioner also argues that plaintiff "did not submit any such records to the Appeals Council, and explicitly represented to the ALJ that the records submitted from Lake Shore were complete". Id., pp. 23-24.

"Where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records". Johnson v. Commissioner of Social Security, 2018 WL 1428251, *5 (W.D.N.Y. 2018). *See also* Rosario v. Colvin, 2017 WL 1314215, *19 (S.D.N.Y.), adopted, 2017 WL 1284900 (S.D.N.Y. 2017) ("while . . .  gaps in the record are not in and of themselves bases for rejecting a claim for disability, they nevertheless represent an appropriate part of the ALJ's inquiry into whether the claimant is in fact disabled . . . . This is because the relevant disability statute places the burden on a claimant to furnish evidence in support of his or her claim"). When that is not the case, the

Second Circuit has broadly held that "[e]ven when a claimant is represented by counsel . . . the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding". Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). However, this is not absolute in all contexts. *See, e.g.*, Rivera v. Commissioner of Social Security, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) ("[c]ourts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel"); Lynn v. Commissioner of Social Security, 2013 WL 1334030, *13 (E.D.N.Y. 2013); Kelly v. Berryhill, 2020 WL 565412, *2 (E.D.N.Y. 2020) ("[w]hatever gaps there may be here are solely attributable to plaintiff's inaction, as made abundantly clear in the hearing transcript").

At the October 2017 administrative hearing, ALJ Baird indicated that he had received 153 pages of Lakeshore Behavioral Health records dating to July 29, 2015, and specifically asked plaintiff's counsel whether the records from Lakeshore Behavioral Health were complete. [7], pp. 38-39. In response, plaintiff's counsel indicated that those records were complete, except for some updated records since April 2017, and ALJ Baird held the record open for two weeks for plaintiff's counsel to provide those records, which were eventually produced. Id., pp. 38-39, 684. Plaintiff did not introduce (or attempt to introduce) any additional Lakeshore Behavioral Health records to the Appeals Council.

Under these circumstances, I cannot conclude that ALJ Baird failed in his duty to develop the record. Similarly, in Curley v. Commissioner of Social Security Administration, 808 Fed. Appx. 41, 44 (2d Cir. 2020) (Summary Order), the Second Circuit concluded that the ALJ did not fail to develop the record because "[w]hen the ALJ discussed the medical records with Curley and his attorney at the beginning of the hearing and asked whether anything was missing,

Curley did not state that he had any physical therapy records that needed to be obtained. Moreover, although he asserts that these records are critical, Curley did not provide them to the district court and does not describe their contents". *See also* Edwards v. Commissioner of Social Security, 2019 WL 1673486, *5 (W.D.N.Y. 2019) ("fulfilling her duty to develop the record, the ALJ shared all of the evidence received by the SSA with Plaintiff and advised him that she would assist him further with development of the record if he identified witnesses or documents, along with their names and addresses. Plaintiff made no such requests. At the appeals level . . . . Plaintiff did not submit additional evidence . . . . If Plaintiff believed additional evidence was in fact available, it was his duty to provide it or at the very least, take advantage of the ALJ's offers to assist him in doing so").

Although plaintiff argues that these records were necessary to the determination of DAA materiality, for the reasons discussed above, ALJ Baird was not required to conduct a materiality analysis. *See* Cheatham v. Commissioner of Social Security, 2018 WL 5809937, *11 (W.D.N.Y. 2018) ("[p]laintiff asserts prison records were necessary to the determination of DAA materiality . . . .  However, as outlined herein, the ALJ had sufficient evidence of periods of sobriety and the opinion of Dr. Gross regarding Plaintiff's mental functioning during those periods. Therefore, there was no 'gap' in the record and there was sufficient evidence upon which the ALJ could make his determination").  Therefore, I find no error in ALJ Baird's development of the record.

**D.     Was Dr. Balderman's Opinion Stale?**

Plaintiff argues that Dr. Balderman's July 2015 physical functional opinion that she had no limitations was rendered stale by plaintiff's subsequent leg fracture and surgery in

-11-

March 2017. Plaintiff's Memorandum of Law [8-1], pp. 17-18.  The Commissioner responds that ALJ Baird found that any limitations resulting from plaintiff's ankle injury would not be expected to meet the 12-month durational requirement, and that since plaintiff does not challenge that finding, plaintiff's ankle impairment is "immaterial for purposes of the RFC analysis". Commissioner's Brief [9-1], pp. 25-27.  Plaintiff does not respond to the Commissioner's argument in her reply.

"The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). See also Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence"); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same).

Since plaintiff failed to challenge ALJ Baird's determination that any limitations from her ankle impairment did not meet the durational requirement, I do not agree with plaintiff that Dr. Balderman's opinion was stale or that that there was any other error in the ALJ's determination that plaintiff was capable of medium work.  See Scott v. Berryhill, 271 F. Supp. 3d 1235, 1247 (N.D. Okla. 2017) ("[p]laintiff does not direct the Court to evidence demonstrating significant deterioration of symptoms that would meet the durational requirement following the opinions of Drs. Baldwin and Post"); Flook v. Berryhill, 2018 WL 4641994, *1 n. 1  (W.D. Pa.

2018) ("even if Plaintiff had been able to show deterioration in his functionality after he stopped taking narcotic medication, he has failed to satisfy the 12-month durational requirement").

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [8] is denied.

 **SO ORDERED**.

Dated: July 15, 2020

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
